**In re William R. ABERNATHY and Peggy V. Abernathy, Debtors.**

**William R. ABERNATHY and Peggy V. Abernathy, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 86 B 08694.
Adv. No. 88 A 00681.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 16, 1993.

Kevin Sprow, McKenzie & McKenzie, Chicago, IL, for debtor, plaintiff.

Benjamin Norris, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the court on the motion of the Debtors, William and Peggy Abernathy, for summary judgment on Counts II and III of their second amended complaint against the United States. For the reasons stated below, this court grants summary judgment for the Debtors on Count II, but denies summary judgment on Count III.

## FACTS

On June 4, 1986, the Debtors filed a joint petition under Chapter 7 of the Bankruptcy Code. The Internal Revenue Service was listed as a creditor on the Debtors' schedules. On October 2, 1986, the Debtors were granted a discharge in their Chapter 7 case. Both parties to this adversary proceeding agree that all of the Debtors' debts, including their 1979–1982 federal income taxes, were discharged. *See* § 727.[1]

Nonetheless, in the years after the grant of the Chapter 7 discharge, the IRS on several occasions attempted to collect the discharged taxes. Among the steps the IRS took were: (1) on May 11, 1987, issuing a notice to the Debtors indicating that their tax refund had been applied to their 1979 income tax obligation; (2) on August 1, 1988, sending notices to the Debtors threatening enforcement action if the 1979–1982 taxes were not paid; and (3) on August 27, 1988, sending the Debtors a notice of levy on wages, salary, and other income. After each collection effort, the Debtors' attorney notified the IRS that the taxes in question had been discharged, and the IRS usually backed off without pressing its enforcement efforts any further.

On September 9, 1988, the Debtors filed the instant adversary proceeding against the United States, alleging that the IRS has violated the permanent discharge injunction of § 524(a) and seeking to recover the attorneys' fees and litigation costs the Debtors have incurred in enforcing the discharge injunction against the IRS's efforts to collect the discharged taxes. Count II of the Debtors' complaint alleges that the United States has waived sovereign immunity with respect to such fees and costs under § 7430 of the Internal Revenue Code, 26 U.S.C. § 7430. In Count III, the Debtors claim that the United States has waived sovereign immunity to such recovery by the Debtors under § 2412(b) of the Equal Access to Justice Act, 28 U.S.C. § 2412(b) ("EAJA").[2]

---

**1.** Unless otherwise indicated, all references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (1993).

**2.** Count I of the Debtors' complaint claimed that the IRS had also waived its sovereign immunity under § 106 of the Bankruptcy Code. In *U.S. v. Nordic Village,* —— U.S. ——, 112 S.Ct. 1011, 117

L.Ed.2d 181 (1992), decided after the Debtors had initiated the instant proceeding, the Supreme Court held that § 106 does not waive the United States' sovereign immunity for an action in a bankruptcy case where the IRS has not filed a proof of claim and where the plaintiff seeks a monetary recovery from the IRS. In

Despite the pendency of the instant adversary proceeding, the IRS continued its collection efforts with respect to the discharged taxes. On March 13, 1989, the IRS served the Debtors with a final notice of intention to levy on its alleged tax lien.

On June 20, 1989, this court found the IRS in civil contempt for violating the permanent discharge injunction of § 524(a).[3] *See* Fed.R.Bankr.P. 9020. The contempt finding did little to slow the IRS down in its zeal to collect the discharged taxes. On June 17, 1991, the IRS notified the Debtors that their 1990 tax refund had been applied to the 1980 taxes, and issued two notices of intent to levy to collect the 1980 and 1981 income taxes. On November 4, 1991, the IRS issued two notices of intent to levy to collect the 1980 and 1981 income taxes. On December 19, 1991, the IRS issued a final notice of intent to levy to collect the 1980 and 1981 income taxes. On February 24, 1992, the IRS notified the Debtors that their 1991 income tax refund had been applied to the 1980 income taxes. On February 27, 1992, the IRS issued yet another final notice of intent to levy to collect the 1980 and 1981 income taxes. Incredibly, the IRS's attempt to collect the discharged taxes continues virtually to this very day. In January 1993, while this motion was pending before this court for a decision on the sanctions question, the IRS indicated its intent to apply the Debtors' 1992 tax refund to the 1980 taxes by denying the Debtors' request for that refund.

On October 23, 1992, the Debtors filed the instant motion for summary judgment on Counts II and III of their complaint, claiming that, as a matter of law, the United States has waived its sovereign immunity under either IRC § 7430 or EAJA § 2412(b), and thus they can be awarded money damages in terms of fees and expenses incurred in warding off the myriad of illegal IRS collection efforts. The United States continues to insist that it has not waived its sovereign immunity under any provision of the United States Code.

## JURISDICTION AND PROCEDURE

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) as a matter arising under § 524 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) as a matter concerning the administration of the estate and as a proceeding affecting the adjustment of the debtor-creditor relationship and is before this court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

## STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings and contested matters in bankruptcy cases by Fed.R.Bankr.P. 7056 and 9014, summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

---

light of *Nordic Village,* the Debtors have decided not to pursue Count I.

**3.** Section 524(a) provides, in pertinent part, that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..." Section 524(a)(2).

## DISCUSSION

This court has already held that the IRS is in civil contempt of this court for its wilful violation of the permanent discharge injunction of § 524(a), enjoining any effort to collect on a discharged debt. Therefore, the only question remaining to be resolved in this adversary proceeding is whether the United States has waived sovereign immunity so as to allow the court to award the Debtors the fees and expenses they have incurred in protecting their Chapter 7 discharge against the IRS's relentless contemptuous assault on that discharge.[4] That is strictly a question of law. There are no disputes of fact between the Debtors and the IRS. Thus, if the court finds that the United States has waived sovereign immunity under either IRC § 7430 or EAJA § 2412(b), the Debtors are entitled to judgment as a matter of law.

■ IRC § 7430 waives sovereign immunity and authorizes an award of attorneys' fees and litigation costs against the United States to a prevailing party in a tax case if: (1) the proceeding is an administrative or court proceeding; (2) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty; and (3) the United States was substantially unjustified in its position. *See* 26 U.S.C. § 7430(a), (c). If the taxpayer can prove these three requirements, the taxpayer may recover reasonable attorneys' fees and other litigation costs. *See* 26 U.S.C. § 7430(c).

I.  Is this proceeding a "court proceeding?"

■ IRC § 7430 is applicable to "any administrative or court proceeding which is brought by or against the United States." [5] A "court proceeding" is defined as "any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court)." 26 U.S.C. § 7430(c)(6). Thus, the question becomes whether the Bankruptcy Court is a "court of the United States," as that term is used in IRC § 7430.

■ In *In re Brickell Investment Corp.*, 922 F.2d 696 (11th Cir.1991), the Eleventh Circuit held that the Bankruptcy Court is not a "court of the United States," and thus is without jurisdiction to award litigation costs and attorneys' fees under IRC § 7430. The *Brickell* court reasoned that the phrase "court of the United States" is meant to include only Article III courts, and thus does not include bankruptcy courts, which, of course, are Article I courts. *Id.* at 701.[6] The Eleventh Circuit drew support from its previous decision in *In re Davis*, 899 F.2d 1136, 1139–40 (11th Cir.1990), in which the court held that, under EAJA, the phrase "court of the United States" includes only Article III courts and thus excludes bankruptcy courts. *See also Bowen v. C.I.R.*, 706 F.2d 1087 (11th Cir. 1983) (tax court does not have jurisdiction to award attorneys' fees under EAJA because it is not an Article III court). *Davis* had relied heavily on an analysis of the legislative history of the predecessor of EAJA § 2412(b), and the *Brickell* court seemed to adopt the analysis of EAJA's legislative history for purposes of IRC § 7430, holding that "[i]nterpretations of § 7430 have relied on precedent interpreting [the predecessor to EAJA § 2412(b)]." *Brickell*, 922 F.2d at 701. The *Brickell* court also drew support from the fact that, in IRC § 7430, Congress specifically defined the phrase "court of the United States" as "including" both the Tax Court and Claims Court, but not the Bankruptcy Court. *Id.; see* 28 U.S.C. § 7430(c)(6).

In addition, bankruptcy judges enjoy no protection against salary reduction. *See* 28 U.S.C. § 153. Accordingly, bankruptcy judges are not "judges" as that term is defined by Article III, Section I of the United States Constitution. *See Northern Pipeline Construction v. Marathon Pipe Line Co.*, 458 U.S. 50, 60–61, 102 S.Ct. 2858, 2865–66, 73 L.Ed.2d 598 (1982).

---

4.  Of course, an award of attorneys' fees and expenses is an appropriate sanction for civil contempt. *Matter of Behm*, 44 B.R. 811, 813 (Bankr.W.D.Wis.1984).

5.  Obviously, this is not an administrative proceeding.

6.  Bankruptcy judges are appointed for a term of fourteen years, not life. 28 U.S.C. § 152(a), (e).

A number of courts have either expressly or impliedly disagreed with *Brickell.* *See U.S. v. McPeck,* 910 F.2d 509 (8th Cir.1990) (remanding case to bankruptcy court for evaluation of fee requests under IRC § 7430); *In re Chambers,* 131 B.R. 818 (Bankr.N.D.Ill.1991), *aff'd in pertinent part,* 140 B.R. 233 (N.D.Ill.1992). *See also O'Connor v. U.S. Dep't of Energy,* 942 F.2d 771 (10th Cir.1991) (holding that "court of United States" as used in EAJA includes the Bankruptcy Court); *In re Esmond,* 752 F.2d 1106 (5th Cir.1985) (remanding case to bankruptcy court for evaluation of fee application under EAJA). While the rulings of both the bankruptcy court and district court in *Chambers* are not binding on this court,[7] the court finds both to be persuasive. Therefore, this court declines to follow *Brickell* and the other Eleventh Circuit precedents.

In interpreting a statute, a court must first examine the statutory language itself. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). When the plain language of the statute is clear, there is no need to look to the legislative history or other extraneous sources for guidance. *In re Powers,* 140 B.R. 476, 479 (Bankr.N.D.Ill.1992) (Ginsberg, J.). *See, e.g., Dewsnup v. Timm,* — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting); *Union Bank v. Wolas,* — U.S. —, 112 S.Ct. 527, 116 L.Ed.2d 514 (1992); *U.S. v. Nordic Village,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1991).

The focus on legislative history in *Brickell* and its predecessors in the Eleventh Circuit was unnecessary, because the meaning of the term "court of the United States" in IRC § 7430 is quite clear. Federal courts may be classified, according to the rights of the judges appointed to staff the court, as Article I or Article III courts. Congress chose not to define the word "court" when it drafted IRC § 7430. Had

it meant to restrict the use of the provision to Article III courts, however, Congress could have done so. The broad, unrestricted language employed by Congress, in its ordinary usage, indicates that "courts of the United States" includes both Article I and Article III courts. Accordingly, it is impossible to conclude, as *Brickell* does, that the phrase "courts of the United States" as used in IRC § 7430 is limited to Article III courts. *See O'Connor,* 942 F.2d at 773 (interpreting the phrase "court of the United States" for purposes of EAJA § 2412(b)).

The fact that IRC § 7430 defines the phrase "court of the United States" as "including", for purposes of that section, one Article I court, the Tax Court, as well as an Article III court, the Claims Court, does not preclude the conclusion that that phrase also includes the Bankruptcy Court. In general, the word "including," as used in a statutory provision like IRC § 7430, is exemplary rather than exhaustive. As Chief Judge Schwartz recently noted in *Chambers:*

> As a matter of statutory construction, courts have frequently determined that "includes" enlarges the scope of a statute rather than limits it. *American Surety Co. v. Marotta,* 287 U.S. 513, 517, 53 S.Ct. 260, 262, 77 L.Ed. 466 (1933). In *Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 4, 86 L.Ed. 65 (1941), the Supreme Court remarked that the phrase "include" is not one of "all embracing definition but connotes simply an illustrative application of the general principle." *See* 11 U.S.C. § 102(3) ("includes" and "including" are not limiting). If Congress had wanted to limit the scope of 26 U.S.C. § 7430 to the courts listed, it clearly could have done so.
>
> The specific mention of the Claims Court and Tax Court and not the Bankruptcy Court makes logical sense. Unlike the Claims Court and Tax Court which are

---

7. District court decisions are of limited authority on bankruptcy court in the same district. Since district court bankruptcy decisions do not bind other district judges in the district, *see United States v. Articles of Drug Consisting of*

*203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987), they are not binding on bankruptcy courts either. *In re Shattuc Cable Corp.,* 138 B.R. 557, 565–67 (Bankr.N.D.Ill.1992).

independent judicial bodies, bankruptcy judges constitute a "unit of the district court." 28 U.S.C. § 151. *See, Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 61, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982). Clearly, a district court is a "court of the United States." It follows that a unit or subsidiary of a "court of the United States" would also fall within this definition.

*Chambers*, 131 B.R. at 824.

Thus, the court concludes that the Bankruptcy Court is a "court of the United States" for purposes of IRC § 7430.

II. Is this proceeding "brought ... in connection with the determination, collection or refund of any tax, interest or penalty ...?"

■■■■ IRC § 7430 is only applicable to proceedings "brought ... in connection with the determination, collection or refund of any tax, interest or penalty...." 26 U.S.C. § 7430(a). Few cases have considered whether an action for civil contempt based upon the IRS' violation of the permanent discharge injunction of § 524(a) is a proceeding "brought ... in connection with the determination, collection or refund of any tax, interest or penalty...."

In *In re Kiker*, 98 B.R. 103, 105 (Bankr. N.D.Ga.1988), the court held that an action for civil contempt based upon the IRS' violation of the discharge injunction came within the language of IRC § 7430(a). *See also In re Hanson*, 148 B.R. 584, 585 (Bankr.E.D.Mo.1992) (stating that whether fees appropriate in civil contempt action against IRS for violation of § 524(a) governed by IRC § 7430, not EAJA § 2412(b)).

This court agrees with *Kiker* and *Hanson*. This proceeding is clearly "brought ... in connection with the determination, collection or refund of any tax, interest or penalty...." 26 U.S.C. § 7430(a). The central theme of the instant proceeding is the IRS's attempts to collect taxes that were discharged in bankruptcy. This proceeding would not have arisen but for the IRS' attempt to collect discharged income taxes. Accordingly, this court finds that the second element of IRC § 7430 is satisfied.[8]

III. Was the United States substantially unjustified in its position?

■■■■ Finally, IRC § 7430 applies only where the United States' position was substantially unjustified. There are two requirements a taxpayer must satisfy to prove that the United States' position was substantially unjustified: (1) the taxpayer must exhaust administrative remedies; and (2) the taxpayer must be the prevailing party. *See Chambers*, 131 B.R. at 825. The burden of proving that the United States' position was substantially unjustified lies with the taxpayers, the Debtors. *See Harrison v. C.I.R.*, 854 F.2d 263, 265 (7th Cir.1988).

Here, it is undisputed that the Debtors have exhausted all administrative remedies. Following each attempt by the IRS to collect the discharged taxes, the Debtors' attorney contacted the IRS and informed it that the taxes had been discharged and that it was violating the discharge injunction. Nonetheless, the IRS continued its collection efforts. Thus, the only issue in this case is whether the Debtors are a prevailing party.

**8.** In so concluding, this court is fully aware of the holding of the district court in *In re Kolb*, 137 B.R. 29, 31 (N.D.Ill.1992) (IRC § 7430 does not apply to civil contempt action for IRS' violation of discharge injunction). *See also In re Shafer*, 146 B.R. 477, 481 (D.Kan.1992) (failing to even consider IRC § 7430 in upholding an award of attorneys' fees under EAJA § 2412(b) against the IRS for § 524(a) discharge violations); *In re Grewe*, 148 B.R. 824, 826 (Bankr. N.D.W.Va. September 21, 1992) (EAJA § 2412(b), rather than IRC § 7430, applies to civil contempt action for IRS' violation of discharge injunction). As previously held in this opinion, district court opinions, while entitled to considerable weight, are not binding on other district judges in this district. *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir.1987). Therefore, such decisions are not binding on this court. *In re Shattuc Cable Corp.*, 138 B.R. 557, 565–67 (Bankr.N.D.Ill.1992). This court respectfully disagrees with *Kolb*. The IRS's wilful violation of the discharge injunction in its illegal collection efforts is sufficient to bring this proceeding within the specific language of IRC § 7430(a).

To be a prevailing party, a taxpayer must prove that: (a) the taxpayer substantially prevailed with respect to the amount in controversy or on the most significant issue; and (2) that the United States' position was substantially unjustified. 26 U.S.C. § 7430(c)(4); *Chambers*, 131 B.R. at 825.

### A. Did the Debtor substantially prevail?

In this proceeding, the Debtor has clearly substantially prevailed with respect to the key issue in the proceeding, which is whether the IRS violated the permanent discharge injunction of § 524(a). On June 20, 1989, this court held the IRS in civil contempt, finding that its continued attempts to recover discharged taxes violated the permanent discharge injunction of § 524(a). Clearly, the Debtors have more than substantially prevailed in their dispute with the IRS.

### B. Was the United States' position substantially unjustified?

The IRS, however, claims that its position was not substantially unjustified because it had a reasonable basis for claiming that sovereign immunity barred any monetary award against it. The IRS clearly would prefer that this court look only to its in-court litigation position (that is, its assertion of a reasonable defense), and to ignore its position with respect to its dispute with the Debtors on an overall basis.

However, it is well established in this circuit that, in ruling on substantial justification, the court can consider not only the United States' in-court litigating position, but also the United States' out-of-court position both before and after the civil action was commenced. *Zinniel v. C.I.R.*, 883 F.2d 1350, 1355 n. 8 (7th Cir. 1989); *Chambers*, 131 B.R. at 825. *But see, e.g., In re Graham*, 981 F.2d 1135 (10th Cir.1992) (contra). An examination of the IRS' out-of-court position both before and during this proceeding makes it clear that the IRS' position was substantially, even completely, unjustified.

The Debtors' 1979–1982 taxes had been discharged by order of this court on October 2, 1986. Notwithstanding this fact, and in spite of the Debtors' attorney's warning that the taxes had been discharged, the IRS repeatedly attempted to collect those taxes. Later, the IRS was found in civil contempt by this court:

> The IRS ... took steps constantly through these proceedings, before these proceedings and during these proceedings, to threaten the Debtors with broader collection methods if the taxes were not paid, including specifically in these post-petition notice of levy threatening wage garnishment and threatening seizure of automobiles and numerous other assets obviously not subject to the levy. The notice—the IRS notice of intention to levy itself belies any defense that the IRS was simply taking a procedural step towards levying against the home. The notice says to the debtor in effect not only, quote, "if you don't pay your 1981 taxes by a date certain we will seize your home," it also quite clearly and effectively says, "if you don't pay your 1981 taxes by a date certain, we'll take your home, your car, your bank account on (sic) any other assets we can find to satisfy those taxes, and we'll levy against your wages." None of which other than the seizure of the home the IRS had the right to do because the IRS had no pre-petition surviving lien in anything other than the Debtors' home and therefore could not threaten to seize any property other than the home to satisfy the discharged 1981 taxes.

*See* Transcript of June 20, 1989 proceeding pp. 4–5.

Nevertheless, despite this court's admonitions and finding of civil contempt, the IRS has continued to harass the Debtors in its efforts to collect the discharged taxes, sending additional notices of levy, applying a subsequent refund to the discharged taxes, and denying another tax refund to the Debtors in order to set that refund off against the discharged taxes.

The IRS's overall conduct in this case can only be characterized as outrageous. Its

computers have contemptuously tried, without any justification whatsoever, to ignore the Debtors' bankruptcy discharge and to proceed as if this bankruptcy case never happened. At the risk of sounding overly dramatic, the legal system of this country depends on the willingness of the parties to a dispute to comply with the rule of law once the dispute is resolved by an appropriate court. *See* David Loth, *Chief Justice John Marshall and the Growth of the Republic* 365 (1949) (reciting President Andrew Jackson's legendary edict to Marshall, "John Marshall has made his decision; now let him enforce it").[9] If the parties to a dispute are unwilling to obey the rule of law, the system fails. In its more than two decade-long involvement as a practitioner, professor and judge in the bankruptcy system, this court has never encountered a more egregious flaunting of the bankruptcy system as that which it has seen by the IRS in this case. For some five years, the constant position of the IRS has been that it is free to ignore the Debtors' bankruptcy discharge of certain taxes as it sees fit.[10] However, the IRS cannot act with impunity, like a rogue elephant. It is not free to simply proceed as if the taxes the Debtors owed the IRS had never been discharged in bankruptcy. The IRS, like any other person or entity involved in a bankruptcy case, must obey the rule of law in this bankruptcy case, which is that the income taxes it seeks to collect have been discharged in bankruptcy and that the IRS is enjoined from trying to collect the taxes, period.

■ Where, as here, however, the IRS takes an arbitrary and unjustifiable position which forces the taxpayer to file suit, the taxpayer should be able to recover the cost of suing. *Powell v. C.I.R.*, 791 F.2d 385, 391–392 (5th Cir.1986). The IRS should not be able to vitiate its prior conduct of unjustifiably harassing a taxpayer into paying a discharged debt by raising a sovereign immunity defense once the taxpayer is forced to commence a lawsuit to fend off the IRS juggernaut. As the United States Court of Appeals for the First Circuit noted in *Kaufman v. Egger*, 758 F.2d 1 (1st Cir.1985), it would "frustrate the purpose of Section 7430 if [the court] were to interpret it in such a way that the IRS, after causing a taxpayer all kinds of bureaucratic grief at the administrative level, could escape attorney's fee liability by merely changing its tune after the initiation of a suit by the taxpayer." *Id.* at 4. Suffice it to say that, without a doubt, the IRS' position was substantially unjustified.

Thus, all three requirements of IRC § 7430 have been met. This proceeding is: (1) an administrative or court proceeding; (2) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty; (3) in which United States was substantially unjustified in its position. The Debtors are entitled to judgment as a matter of law on Count II, and may recover reasonable attorneys' fees and other reasonable litigation costs.[11]

## CONCLUSION

For the reasons stated above, the court grants the Debtors' motion for summary judgment with respect to Count II, but denies summary judgment with respect to Count III as unnecessary. The Debtors are entitled to reasonable attorneys' fees and other litigation costs from the IRS in this and other proceedings relating to the

---

**9.** Apparently, the story is apocryphal and President Jackson never made the remark attributed to him. David Loth, *Chief Justice John Marshall and the Growth of the Republic* 365 (1949).

**10.** This conduct has only been engaged in by those in charge of the IRS's computers. There has been no misconduct by any lawyer representing the IRS. Counsel for the IRS has tried in vain to get the personnel in charge of collection efforts against these Debtors to reprogram their computers.

**11.** Because the court holds that IRC § 7430 applies in the context of the instant proceeding, EAJA § 2412(b) does not apply. *See* 28 U.S.C. § 2412(e) (§ 2412(b) does not apply to "any proceeding to which section 7430 of the Internal Revenue Code of 1954 applies"). Thus, the court need not consider whether the Debtors would otherwise be entitled to attorneys' fees and litigation costs under EAJA § 2412(b).

IRS's illegal efforts to collect their discharged taxes. The Debtors are ordered to file a fee application by March 9, 1993 indicating the amount of attorneys' fees and other litigation costs incurred in the instant proceedings that the Debtors seek to recover from the IRS.[12] Objections to that fee application based on its reasonableness may be filed with this court by the IRS by March 23, 1993. If the IRS chooses to file objections, the Debtors may, but are not required to, file a response by March 30, 1993. A hearing on the reasonableness of the fee application will be held on April 6, 1993.

---

12. When filing his fee application, the Debtors' attorney should keep in mind that IRC § 7430 limits the rate of compensation to $75.00 per hour, unless certain factors justify a higher rate. *See* 26 U.S.C. § 7430(c)(1)(B)(iii).