**In re William R. ABERNATHY and Peggy V. Abernathy, Debtors.**

**William R. ABERNATHY and Peggy V. Abernathy, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 86 B 08694.
Adv. No. 88 A 00681.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 6, 1993.

Kevin Sprow, McKenzie & McKenzie, Chicago, IL, for debtors/plaintiffs.

Benjamin Norris, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

In a previous opinion,[1] this court held that the Debtors, William and Peggy Abernathy, are entitled to recover reasonable fees under Internal Revenue Code § 7430 from the United States arising out of proceedings relating to the Internal Revenue Service's illegal continuing efforts to collect taxes that had been discharged in the Debtors' Chapter 7 bankruptcy case. Accordingly, the Debtors have filed an application to recover fees and expenses in the amount of $110,269.16 from the IRS. Not surprisingly, the IRS has filed objections to the Debtors' fee application. The IRS's objections are now before the court for determination. Unfortunately, the record before the court does not allow complete determination of the IRS's objections.

### FACTS

On June 4, 1986, the Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. They scheduled the IRS as a creditor on their bankruptcy schedules. On October 2, 1986, the Debtors received a discharge in their Chapter 7 case. Both parties to this adversary proceeding agree that all of the Debtors' debts, including their 1979–1982 federal income taxes, were included within that discharge. See 11 U.S.C. § 727; Fed. R.Bankr.P. 4004. Unfortunately, in the years since the Debtors received their Chapter 7 discharge, the discharge has done little to slow the IRS in its efforts to collect the discharged taxes.[2]

On September 9, 1988, the Debtors filed the instant adversary proceeding against the United States, alleging that the IRS's attempts to collect the discharged debts violated the permanent discharge injunction of § 524(a).[3] The Debtors prevailed in that adversary proceeding. In the instant proceeding, the Debtors seek to recover from the IRS the fees incurred by their attorney, Robert McKenzie, and other costs the Debtors have incurred in enforcing the discharge injunction against the IRS's efforts to collect the discharged taxes.

On June 20, 1989, this court found the IRS in violation of the permanent discharge injunction of § 524(a). See also Fed. R.Bankr.P. 9020. Thereafter, on February 16, 1993, this court held that the Debtors could recover fees and costs incurred in enforcing the discharge injunction against the IRS's illegal efforts to collect the discharged taxes, because the IRS had waived sovereign immunity under Internal Revenue Code § 7430. In re Abernathy, 150 B.R. 688 (Bankr.N.D.Ill.1993).

Pursuant to this court's order, the Debtors filed a fee application, seeking to recover fees and expenses under § 7430. See Abernathy, 150 B.R. at 697. Not surprisingly, the United States subsequently objected to the Debtors' fee application.

### JURISDICTION AND PROCEDURE

This court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter

---

1. *In re Abernathy,* 150 B.R. 688 (Bankr.N.D.Ill. 1993).

2. A more detailed description of the IRS's dogged pursuit of the discharged taxes from the Debtors can be found in *In re Abernathy,* 150 B.R. 688 (Bankr.N.D.Ill.1993).

3. Section § 524(a) provides, in pertinent part, that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..." 11 U.S.C. § 524(a)(2).

arising under § 524 of the Bankruptcy Code. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) as a matter concerning the administration of the estate and as a proceeding affecting the adjustment of the debtor-creditor relationship and is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

### DISCUSSION

The United States objects to the Debtors' fee application in three main respects. First, the United States claims that the Debtors cannot receive fees or expenses because they have not shown that they have a fee agreement with McKenzie. Moreover, even if a fee agreement is shown to exist or is not required, the United States claims, the Debtors' fee application is defective, since it requests that the court allow an hourly rate of more than $75 an hour. Finally, the United States alleges that the Debtors' fee application is defective on the merits because it has numerous shortcomings that prevent this court from determining the amount of fees and expenses the Debtors and their counsel are entitled to be allowed in connection with the instant fee application.

This court holds that no fee agreement is required to be proven for an award of compensation under § 7430. However, the court also concludes that, on the record as it now stands, the court is unable to determine what hourly rate Debtors' counsel is entitled to charge under § 7430. Finally, the court is also unable, on the record now before it, to determine the merits of the other objections raised by the IRS to the merits of the Debtors' fee application.

I.  Can the Debtors recover actual fees and expenses incurred under § 7430 without proof of a fee agreement between them and McKenzie?

■ In *In re Abernathy*, 150 B.R. 688 (Bankr.N.D.Ill.1993), this court held that the Debtors are entitled to recover, under

§ 7430, reasonable costs and fees against the United States arising out of proceedings relating to the Debtors' efforts to ward off the IRS's illegal efforts to collect discharged taxes. The United States now argues that, because the Debtors did not present evidence of a fee agreement with their counsel, the Debtors have not shown that they actually incurred the fees and costs at stake in this proceeding, and thus are not entitled to such fees and costs.

The United States' position in this regard is erroneous. The fee award in this case is governed by IRC § 7430. Nothing in § 7430 requires proof of a fee agreement with a taxpayer's attorney as a condition precedent to recovering attorneys' fees and related costs from the United States. Rather, § 7430 requires only that a taxpayer seeking a fee award from the United States prove that the taxpayer: (1) was a prevailing party; and (2) filed a fee application within 30 days of entry of its judgment against the United States. In the instant proceeding, the Debtors have met both requirements. *See Abernathy*, 150 B.R. at 696–97.

■ The United States' reliance on *In re Pettibone Corp.*, 74 B.R. 293 (Bankr. N.D.Ill.1987) is misplaced. In *Pettibone*, the court properly held that the burden of proving actual fees and costs incurred rests on the applicant. *Id.* at 299. The Debtors concede as much. However, the United States reads *Pettibone* to require actual proof of a fee agreement in order to meet that burden.

*Pettibone* sets out in detail the requirements for a fee application in bankruptcy cases and proceedings. Its approach has become the law of this district, *see, e.g., In re Stoecker*, 114 B.R. 965 (Bankr.N.D.Ill. 1990), and this circuit, *see In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir.1992). Undoubtedly, Judge Schmetterer's approach to fee application in *Pettibone* will become the national norm. *See, e.g., In re Sirefco, Inc.*, 144 B.R. 495 (Bankr.D.Mont.1992). However, nothing in *Pettibone* or its progeny suggests that a fee agreement is a prerequisite to a fee

award in bankruptcy cases or proceedings. *Cf.* 11 U.S.C. § 328.[4] Thus, proof of a fee agreement is not required to recover actual fees and expenses incurred.[5]

## II. What hourly rate is McKenzie entitled to charge under § 7430?

Section 7430(c) provides that Debtors' counsel is entitled to recover reasonable fees at the base rate of $75 an hour. *See* 26 U.S.C. § 7430(c)(1)(iii). However, § 7430(c) also provides that the $75 base rate may be increased in either of two circumstances: (1) if "special factors" exist; or (2) to reflect a change in the cost of living.

### A. Are special factors present in this proceeding?

The Debtors claim that special factors are present in this case, and that Debtors' counsel should receive fees at a $90–120 hourly rate instead of the $75 hourly base rate. The Debtors argue that their attorney is entitled to be paid at such higher rates because: (1) this case was unusually complex; and/or (2) McKenzie is a tax and bankruptcy specialist.

#### (1) Should unusual complexity be considered a special factor under § 7430?

■ The Debtors and their counsel rely on in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir.1974), in which the Fifth Circuit held, *inter alia,* that the complexity of a proceeding could be considered in determining the reasonableness of a fee award. *Johnson,* however, was decided under § 706(k) of Title VII

of the Civil Rights Act of 1964, not under § 7430(c). *See* 42 U.S.C. § 2000e–5(k). Moreover, *Johnson* concerned the overall reasonableness of a fee request. In contrast, the instant case turns on the interpretation of a narrow statutory exception to § 7430. Therefore, *Johnson* has no application in the context of the instant dispute. The complexity of this case is essentially irrelevant. *See Pierce v. Underwood,* 487 U.S. 552, 573, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988) (holding that, under Equal Access to Justice Act which contains the same fee award language as § 7430, novelty and complexity irrelevant).[6]

#### (2) Should McKenzie's alleged expertise in taxation and bankruptcy be considered a special factor?

■ Section 7430 specifically provides that the $75 base rate may be increased if the Debtors can show the "limited availability of qualified attorneys" for the proceeding in which they prevail. In *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988), the Supreme Court (Scalia, J.) interpreted the "limited availability" language in a similar provision of the Equal Access to Justice Act ("EAJA") to require a showing that the attorney has:

"some distinctive knowledge or specialized skill needful for the litigation in question ... Examples ... would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only

---

**4.** Moreover, *Pettibone* concerned fees sought under § 330 of the Bankruptcy Code. Here, fees are being sought under IRC § 7430.

**5.** The United States speculates that the only fee arrangement between the Debtors and their counsel in this case was an invalid contingency agreement or an illegal champertous arrangement. The present record contains no evidence supporting the existence of such an agreement. The affidavit of Gerald Miller merely suggests that McKenzie recognized the realities of the situation he finds himself in. His chances of recovering his fees from his Chapter 7 debtor clients are virtually nonexistent. Therefore, if he cannot recover his fees from the IRS, his

representation of the Debtors is likely to be pro bono on an involuntary basis. If it desires, the IRS may attempt to show that there is any merit to its speculation at the hearing described below.

**6.** Moreover, the court does not believe this proceeding, involving a relatively straightforward although sometimes trying enforcement of the Debtors' discharge injunction, can be considered unusually complex. Except for the sovereign immunity problem, the result under § 524(a) of the Bankruptcy Code is clear. *See* § 524(a) ("any act" to collect a discharged debt is enjoined by a bankruptcy discharge).

at rates in excess of the $75 cap, reimbursement above that limit is allowed."

Thus, under *Pierce*, this court should consider three factors in determining whether McKenzie is entitled to be paid at an hourly rate beyond the base rate fixed by § 7430: (1) whether the attorney has a specialized skill; (2) necessary to the litigation; (3) which cannot be obtained elsewhere at the current § 7430 hourly statutory rate.

Applying the *Pierce* test, McKenzie's alleged expertise as a tax and bankruptcy attorney is not a special factor in this proceeding for purposes of § 7430.[7] In *Bode v. United States*, 919 F.2d 1044, 1050 (5th Cir.1990), the court held that, under *Pierce*, expertise in taxation could not be considered a specialized skill. That conclusion is beyond logical dispute. If tax law were considered a specialty permitting a market rate in excess of the $75 statutory rate to apply, fees in excess of the statutory rate could be recovered in virtually all cases in which § 7430 applies. This is true because the only people who can apply for fees under § 7430 are those who have defeated the IRS. *See* 26 U.S.C. § 7430(a), (c)(4). The exception would erode the rule. *Id.* Thus, McKenzie's alleged expertise in tax law does not meet the first *Pierce* factor.

Moreover, McKenzie's alleged expertise in bankruptcy does not qualify as a special factor under § 7430 in this case. It is true that expertise in the area of bankruptcy could be considered a specialized skill in certain circumstances. However, the determination must be made on a case-by-case basis. It is not susceptible to a general rule. The instant proceeding, while time-consuming and frustrating, was a relatively non-complex enforcement of the discharge injunction imposed on the collection of discharged debts by § 524 of the Bankruptcy Code. This is a subject any lawyer with a basic knowledge of bankruptcy could have prosecuted. Thus, no specialized bankruptcy knowledge was necessary in the instant proceeding, and the second

*Pierce* factor is not present in the instant proceeding.

Consequently, there are no special factors present to justify a higher than usual base rate in the instant proceeding.

B. What is the appropriate cost of living adjustment?

The Debtor also argues that § 7430's hourly base rate should be adjusted to reflect an increase in the cost of living. The United States does not dispute that claim. However, the Debtors and the United States cannot agree on the base date from which the cost of living adjustment ("COLA") should be computed.

(1) What is the appropriate base date from which the COLA should be computed?

■ Some courts have held that the base date from which § 7430's COLA should be computed is October 1, 1981, the date of the enactment of EAJA, which applies to the recovery of fees by private litigants against the United States in non-tax cases. *See* 28 U.S.C. § 2412(e). In *Bayer v. Commissioner of Internal Revenue*, 98 T.C. 19, 27 (1992), the tax court reasoned that, in amending § 7430 in 1986, "Congress meant to equalize the litigation fee structure in tax and non-tax cases." Therefore, the court held, "COLAs to the $75 rate awarded under Sec. 7430 [should] be indexed back to October 1, 1981." *Id.*

■ This court strongly disagrees with the tax court's reasoning. COLAs are not automatic. A COLA is appropriate only where there is a demonstrable increase in the cost of living "since the date of the statute's effectiveness." *See Wells v. Bowen*, 855 F.2d 37, 43 (2d Cir.1988). Prior to 1986, § 7430 provided that fees may be recovered, but capped the amount of recovery at $25,000. The prior version of § 7430 did not limit the recovery to any hourly rate. *See* 26 U.S.C. § 7430(c)(1) (1989) (former provision). Effective January 1, 1986, § 7430(c) was amended to its current form.

---

7. The Debtors offered nothing but bare allegations of McKenzie's alleged expertise in federal tax law and bankruptcy. Because of the court's disposition on the issue of expertise, the court need not determine whether McKenzie is an expert in either taxation or bankruptcy law.

The 1986 amendment established the $75 an hour fee rate, and allowed courts to subsequently add COLAs to that rate. There is no evidence, however that Congress intended to pre-date § 7430's new fee structure to the date of EAJA. If that had been Congress' intent, it could simply have calculated a COLA from 1981 to 1986, and adjusted the $75 hourly base rate upward accordingly. *Cassuto v. Commissioner of Internal Revenue*, 936 F.2d 736, 742–43 (2nd Cir.1991). *See also Bode v. U.S.*, 919 F.2d 1044 (5th Cir.1990).[8] Thus, this court holds that the base date for computing a cost of living adjustment under § 7430 is January 1, 1986, the date § 7430, in its current form, became effective.

(2) How must the cost of living adjusted-hourly base rate be computed for purposes of § 7430?

▪ This court concludes that the cost of living-adjusted hourly rate should be computed in the following manner. For each year in which a prevailing party incurred fees and in which there was an increase in the actual cost of living as determined by the consumer price index, a cost of living adjustment must be calculated. *See, e.g., Cassuto v. Commissioner of Internal Revenue*, 93 T.C. 256, 1989 WL 98722 (1989), *rev'd on other grounds*, 936 F.2d 736 (2d Cir.1991). A new hourly rate should then be computed for each year in which the prevailing party incurred fees and costs. Fees and costs incurred in that year may be recovered at the adjusted hourly rate for that year.

For fees incurred in this case, the parties agree that the cost of living adjusted-hourly rates are as follows:

| Year | Rate |
|---|---|
| 1986 | $75.00 |
| 1987 | 77.74 |
| 1988 | 80.95 |
| 1989 | 84.85 |
| 1990 | 89.44 |
| 1991 | 93.20 |
| 1992 (through 6/30/92) | 95.26 |

▪ Unfortunately, the Debtors' fee application does not break down the fees they incurred in each year separately. Obviously, such a breakdown is crucial to the computation of an appropriate fee award, since a different adjusted base rate applies in each year. Absent such a breakdown, the Debtors cannot be awarded any fees for compensation earned by their attorney.

III. Are the general objections of the United States to the merits of the Debtors' fee application valid?

▪ The United States claims that the Debtors' fee application: (1) failed to sufficiently explain time entries relating to letters and documents, telephone calls, conferences, and legal research; and (2) improperly recorded all time spent at no less than .25 hours per project, without regard to the amount of actual time spent on the project.

The United States' objections in this regard are not aimed at specific line entries in the Debtors' fee application. Rather, they are simply stated generally, leaving it to the court to try to figure out to which specific entries the United States is referring. It is the United States' responsibility to make its objections clear. Thus, the court will require the United States to file a supplemental brief in which it applies these general objections to specific line items so that the court may properly evaluate their validity.

*CONCLUSION*

For the reasons stated above, this court cannot rule in full on the United States' objections to the Debtors' fee application. The court holds that the Debtors have met their burden of proving the actual fees and expenses incurred in pursuing the instant litigation against the United States. However, the court orders the Debtors' to provide a detailed yearly breakdown of the fees and costs sought in this proceeding. That breakdown must be filed with the court no later than August 6, 1993. Fur-

**8.** For the same reasons, this court considers any claim that the base date should be calculated from the original effective date of § 7430, March 1, 1983, defective. *See Buchanan v. U.S.,* 755 F.Supp. 319 (D.Or.1990) (calculating COLA from March 1, 1993); *but see Bode v. U.S.,* 919 F.2d at 1053 n. 8 (rejecting *Buchanan* for the reasons adopted by this court).

thermore, the court orders the United States to file a supplemental brief applying its general objections to individual line items in the Debtors' fee application by August 6, 1993. The Debtors may reply to that supplemental brief by August 20, 1993. An evidentiary hearing on the matters raised will be held on September 20, 1993, at 11:00 A.M.