**In re S. Dean MATTHEWS and Julia B. Matthews, Debtors.**

**S. Dean MATTHEWS and Julia B. Matthews, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 92–10939–MAM–7. Adv. No. 94–1269.**

United States Bankruptcy Court, S.D. Alabama.

April 11, 1995.

Lionel C. Williams, Mobile, AL, for plaintiffs.

Carol Koehler Ide, Washington, DC, for defendant.

## ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter is before the Court on the complaint of the Plaintiffs/Debtors, the Matthews (the "Debtors," the "Plaintiffs" or the "Matthews"), against the United States (the "Internal Revenue Service" or the "IRS"),[1] for civil contempt, for damages for violation of the automatic stay under 11 U.S.C. § 362(h), for violation of the discharge injunction under 11 U.S.C. § 524(a), for injunctive relief and for relief under 5 U.S.C. § 504. This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O) and, therefore, the Court can enter a final order in this matter. For the reasons indicated below, the Matthews are awarded a

---

1. The United States of America is the proper party defendant in a suit brought against an agency of the government such as the Internal Revenue Service. *United States v. Seidle (In re F.C.M. Corp.)*, 1987 U.S.Dist. LEXIS 15275; *Blackmar v. Guerre*, 342 U.S. 512, 514, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *Scott v. Internal Revenue Service*, 622 F.Supp. 537, 538 (E.D.Tenn.1985). However, since the IRS is the entity the Matthews dealt with in this case, the Court will speak of the defendant as the IRS.

judgment in the amount of $3,000.00 against the United States of America.

### FACTS

The Matthews' bankruptcy case and this adversary proceeding became necessary because Mr. Matthews worked in Saudi Arabia in 1983 and 1984. When a taxpayer returns from foreign employment, he or she has one year to file an IRS Form 911.[2] If this form is timely filed, no tax is due to the United States on the foreign income. The Matthews did not file this form, apparently due to bad or no advice. They consequently owed the government $62,930.64 in federal taxes. There was no evidence that the Matthews knowingly disobeyed the tax laws. They appeared genuinely mortified by their predicament.

The Matthews obtained counsel prebankruptcy and attempted to negotiate a compromise of the tax debt owed based upon the equities of the case and the assets the Matthews had which were available for payment of the debt. No compromise could be reached and so the Matthews decided that they had no choice but to file bankruptcy.

The Debtors filed a joint Chapter 7 bankruptcy case on May 4, 1992. They listed debts to the Internal Revenue Service for federal income taxes for 1983 and 1984 in their bankruptcy schedules. These debts, at the filing of their petition, were at least $120,000 with interest and penalties. (The IRS timely filed a proof of claim indicating $175,096.97 was due.) The Debtors properly gave notice to the IRS of their filing.[3] The Debtors' case was a "no asset" case, meaning there were no nonexempt assets of the Debtors available to distribute to unsecured creditors. The Matthews did have some nonex-

empt assets that were over-encumbered by liens of secured creditors including the IRS. The assets were either foreclosed upon during the Matthews bankruptcy case after relief from the stay or were foreclosed upon after the bankruptcy trustee abandoned them at the end of the case.[4] On July 20, 1992, Debtors filed a lawsuit in the bankruptcy court seeking a declaration that their 1983 and 1984 federal income taxes were debts dischargeable in their bankruptcy case. The Debtors received a final judgment declaring the tax debts dischargeable on September 3, 1992 to which the IRS consented in writing. On October 2, 1992, Debtors received a discharge under Chapter 7 of the Bankruptcy Code.

At filing, all creditors, including the IRS, became subject to the automatic stay in the Matthews case.[5] 11 U.S.C. § 362. The IRS and Debtors' counsel took the following actions while the automatic stay or discharge injunction were in effect as to the Matthews and their property:

1. September 3, 1992—2 notices of intent to levy for 1983 and 1984 taxes sent to Debtors. (Debtors' counsel sent a letter to the IRS on October 20, 1992, responding to these notices, indicating Debtors had filed bankruptcy and the taxes had been declared dischargeable.)

2. December 1, 1992—Information Request re 1983 and 1984 taxes with summary showing 1983 and 1984 taxes due sent to Debtors.

3. November 23, 1993—"Final Notice" sent by IRS by certified mail to Debtors demanding payment in full of 1983 and 1984 taxes. It stated in an inconspicuous, unexplained insert on

---

2. 26 U.S.C. § 911(e).

3. They noticed the Memphis office, Special Procedures Division of the IRS and the Attorney General of the United States.

4. The Matthews forgot to list one 1.8 acre parcel of land on their schedules which was across the road from the remainder of the nonexempt land they did list. The Matthews failure to list the small parcel was inadvertent. This land was seized and sold by the IRS after the bankruptcy pursuant to the November 23, 1993 notice.

5. The IRS evidence indicated that the IRS put a "freeze code" on the 1983 and 1984 taxes in October 1993 which means that no collection would be taken on the accounts. It is unclear why the freeze did not occur until 1½ years after the case was filed. Later, the accounts were "unfrozen," apparently to accomplish the seizure and sale of the bankruptcy real estate assets of the Debtors.

the Notice—"ONLY ON PROPERTY ABANDONED IN BANKRUPTCY CASE 92–10939." Other paragraphs in the Final Notice state that "full payment of the federal tax liability" has not been received. The notice instructed the Matthews to send full payment of $195,858.15 "today" to prevent action from being taken. This was sent by IRS Agent Forehand. (Debtors' counsel responded to this letter on December 3, 1993 stating that the Matthews were discharged from the debt and asking the IRS to "please cease all further collection efforts or I will be forced to file a Motion for Contempt against the IRS in the United States Bankruptcy Court.")

4. December 13, 1993—IRS employee Forehand sends Matthews' counsel a letter threatening criminal sanctions under 26 U.S.C. § 7212 if counsel continued to attempt "to interfere with the IRS." (Debtors' counsel speaks with IRS Special Procedures Advisor, Ms. Andreades, and she indicates the IRS will "leave the Matthews alone.")

5. May 2, 1994—Notices of Intent to Levy for 1983 and 1984 taxes by Automated Collection Services ("ACS") of the IRS to the Matthews.

6. May 2, 1994—Seizure by ACS of 1992 tax refund of $1,733 of Matthews to pay 1983 taxes.

7. May 16, 1994—Seizure by ACS of Matthews' 1993 tax refund of $60 to pay 1983 taxes.

8. August 4, 1994—Debtors' counsel calls IRS re levies and informs of discharge. The IRS representative indicates she will look into the matter.

9. September 19, 1994—Notice of Assignment of 1983 and 1984 Tax Liabilities for Collection sent to Matthews.

10. December 28, 1994—Matthews bring this action.

The IRS admitted that the correspondence and actions alleged by the Debtors occurred; however, an IRS agent testified that the IRS's actions violative of the stay were unintentional and caused no harm. The Debtors received a refund of the 1992 and 1993 tax refunds wrongly seized by the IRS two days before trial began in this case.[6]

The Matthews and the IRS disagree on exactly how upsetting the notices sent to the Debtors were. The Matthews testified that the correspondence made them angry and physically ill. Mr. Matthews was so upset he vomited. Mrs. Matthews cried. Mrs. Matthews was so stressed by the repeated letters that she had to resign from her job. The Matthews children also were upset by their parents' reaction to the IRS correspondence. Mr. Forehand, the IRS agent in charge of the Matthews matter, indicated that he would have expected the Matthews or their counsel to call him if they had problems or questions and they never did. The Debtors and their counsel testified that they called or wrote the party or office that sent them the correspondence as instructed by the letters sent. Many of the letters were sent by ACS and not Mr. Forehand.

Mr. Forehand stated that he sent the Final Notice demanding payment in November 1993, even though he knew about the bankruptcy discharge because he was required to do so by law when he sold the abandoned assets from the Matthews bankruptcy estate. He specifically added to the notice a statement that it applied only to the abandoned assets. The notice as to the levy's limited purpose was not clear or conspicuous to the average person.

The IRS agent testified that the IRS will sometimes make levies or offsets in error due to IRS procedures and the size of government operations. Usually, if this occurs, the taxpayers or their counsel will call him and he will straighten the matter out with the Special Procedures staff without much difficulty. That did not happen in this case, either when Mr. Williams contacted Mr. Forehand or Ms. Andreades or ACS.

---

**6.** To accomplish this, the IRS agent handling the case finally did a manual refund, not waiting for the normal processing. It is unclear from the evidence exactly when the manual or normal process to issue the refund was commenced.

Mr. Forehand, the IRS agent, did not know why the Automated Collection Services unit of the IRS levied on the Matthews refunds after receiving notice of the Debtors' bankruptcy and discharge. He was not responsible for that levy and could not explain it. However, he testified that it had happened before and will happen again.

Mr. Forehand did not believe his letter to Debtors' bankruptcy counsel was inappropriate. Mr. Forehand sent Mr. Williams the letter threatening criminal sanctions because of Mr. Williams' threat of contempt proceedings in his correspondence. Mr. Forehand was only proceeding against abandoned property and felt that Williams was incorrect in threatening contempt. He believed the Final Notice of November 23, 1993 made clear that his intent was only to make a collection from assets abandoned by the bankruptcy trustee. He also felt that Williams was "on thin ice" since he had not filed a power of attorney. He did not mention in his letter to Williams that a power of attorney was needed however.

Mr. Williams' bill for services rendered to the Matthews in this matter totaled $2,733.50. It represented 24.85 hours of work at $110 per hour. The estimate for trial time was 2.5 hours. The actual trial time and time to respond to the Court's request for case law was closer to 4.0 hours. Mr. Williams incurred $243.20 in costs directly related to the suit for fees, postage and photocopies. His work is worth $110 per hour or more.

### LAW

The Debtors allege that the IRS's actions are actionable (1) under 11 U.S.C. § 105 and as civil contempt, (2) under 11 U.S.C. § 362(h), (3) under 11 U.S.C. § 524 and (4) under 5 U.S.C. § 504. The Court will discuss each of these issues in order and then disclose the damages sustained by the Matthews.

### A.

Debtors argue that the IRS is guilty of civil contempt through its actions in violating statutory injunctions. Civil contempt, pursuant to Fed.R.Bankr.P. 9020(b) may be dealt with by a bankruptcy judge "after a hearing on notice." The trial in this adversary case constitutes "a hearing on notice."

Civil contempt power is inherent in bankruptcy courts since all courts have authority to enforce compliance with their lawful orders. *In re Galvez,* 119 B.R. 849 (Bankr.M.D.Fla.1990). This inherent authority extends to statutory "orders" such as the automatic stay and the discharge injunction. *Kimco Leasing, Inc. v. Knee,* 144 B.R. 1001 (N.D.Ind.1992).

A request for relief from civil contempt is often coupled, as in this case, with a request for relief under 11 U.S.C. § 105(a). Section 105(a) empowers a bankruptcy court to "issue any order ... or judgment that is necessary or appropriate to carry out the provisions of this title." This section coupled with the inherent contempt power of courts gives a bankruptcy court authority to determine all of the issues raised by the Matthews. *In re Galvez, supra* at 850.

In this case, the IRS's actions did violate the automatic stay and the discharge injunction. The IRS was properly noticed of the bankruptcy filing, filed a proof of claim on March 15, 1993, and consented to an order declaring the Debtors' tax debts dischargeable. After all this, the IRS still proceeded to send levy notices to the Debtors and seized two tax refunds. It can hardly be said the IRS's actions were not knowing. The IRS knew of the bankruptcy and the discharge of the debts and still proceeded against the Matthews property. Mistake or computer error or good intentions is not an excuse when the problems continue for two years and at least eight different actions are taken by the IRS. Therefore, this action was in contempt of the automatic stay and the discharge injunction.

### B.

The Debtors allege that the IRS actions are actionable under 11 U.S.C. § 362(h) which states:

An individual injured by any willful violation of a stay provided by [§ 362(a)] shall recover actual damages, including costs

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The IRS violated 11 U.S.C. § 362(a)(6) when it attempted "to collect ... or recover a claim against the debtor that arose before the commencement of the case." An action is "willful" under § 362(h) if the creditor engage[d] in a deliberate action that is done in violation of the automatic stay with knowledge that the debtor has filed a petition in bankruptcy." *Washington v. IRS (In re Washington)*, 172 B.R. 415, 419 (Bankr. S.D.Ga.1994). Since the Matthews received their discharge on October 2, 1992, the only acts violating the stay were the two notices of levy. In this case, the IRS knew of the bankruptcy filing and the discharge of the tax debts and still proceeded to take action against the Matthews and their property. These acts, when taken as a part of the IRS's entire pattern of activity in the case, were intentional and inappropriate violations of the stay.

## C.

The Debtors also allege that the IRS's actions violate their discharge injunction under 11 U.S.C. § 524(a)(2). It states "a discharge ... operates as an injunction against ... an act to collect [a discharged] debt as a personal liability of the debtor ..." This injunction replaces the automatic stay after debtors receive a discharge of their prebankruptcy debts. *FDIC v. Peterson (In re Peterson)*, 118 B.R. 801, 802 (Bankr.N.M.1990). The Matthews' discharge was received on October 2, 1992. All of the actions except the notices of levy sent on September 3, 1992 violated the discharge injunction.

This injunction, if violated, authorizes a court to hold a violating creditor in contempt and award attorneys fees. *In re Elias*, 98 B.R. 332 (N.D.Ill.1989); *Kolb v. United States (In re Kolb)*, 137 B.R. 29 (N.D.Ill.1992). The 1994 Reform Act makes clear that § 524 applies to governmental entities such as the IRS. 11 U.S.C. § 106(a).[7] This code section was effective on October 22, 1994 as to all cases commenced before, on or after that date. Therefore, the discharge injunction does apply to the IRS in this matter. The IRS's actions were intentional and inappropriate. After numerous attempts to stop the notices, the IRS persisted in its efforts and even seized tax refunds.

## D.

The Matthews allege that the IRS is liable to them under 5 U.S.C. § 504 as well for attorneys fees and costs. This provision is part of the Act known as the Equal Access to Justice Act ("EAJA").[8] The statute states, however, at Section 504(f) that "no award may be made under the section for costs, fees or other expenses which may be awarded under [26 U.S.C. § 7430]." Title 26 is the codification of the Internal Revenue Code. Case law has held that § 7430 and not the EAJA governs in cases dealing with IRS actions against discharged debtors. *Grewe v. United States (In re Grewe)*, 4 F.3d 299, 301 (4th Cir.1993); *United States v. Germaine (In re Germaine)*, 152 B.R. 619, 625 (9th Cir. BAP 1993). Therefore, 26 U.S.C. § 7430 should govern any fees awarded in this case—not 5 U.S.C. § 504.

The applicability of 26 U.S.C. § 7430 to attorneys' fee awards in tax related bankruptcy cases is further bolstered by the newly amended 11 U.S.C. § 106(a). Section

**7.** Cases decided prior to the passage of the Bankruptcy Reform Act of 1994 disagreed about the authority of federal courts to hold governmental entities liable for violations of the discharge injunction. *Kolb*, 137 B.R. 29 (N.D.Ill.1992) (Section 106(c) permitted damage and attorney fee award); *Moulton v. United States (In re Moulton)*, 146 B.R. 495 (Bankr.M.D.Fla.1992) (Section 524 applied to government even without reliance on Section 106(c); *In re Abernathy*, 150 B.R. 688 (Bankr.N.D.Ill.1993) (government waived sovereign immunity under 26 U.S.C. § 7430); *In re Jones*, 164 B.R. 543 (Bankr.N.D.Tex.1994); *con-*

*tra, Brown v. United States (In re Brown)*, 159 B.R. 1014 (Bankr.S.D.Ga.1993) (no waiver of sovereign immunity); *In re Shafer*, 146 B.R. 477 (D.Kan.1992) (no sovereign immunity waiver under Section 106(c) but civil contempt power allows fee award), *rev'd* 148 B.R. 617 (Bankr. D.Kan.1992).

**8.** The Equal Access to Justice Act was passed in 1980 and is codified at 5 U.S.C. § 504 and 28 U.S.C. § 2412. *Clifton v. Heckler*, 755 F.2d 1138 (5th Cir.1985).

106(a)(3) of the Bankruptcy Code states that any order or judgment entered against a governmental entity "shall be consistent with the provisions and limitations of [28 U.S.C. § 2412(d)(2)(A) ]." Section 2412(d)(2)(A), which generally governs procedures in cases in which the United States is a party, specifically enumerates the fees (including maximum hourly rates of counsel) and costs awardable to litigants prevailing against the United States. 26 U.S.C. § 7430(c)(1) contains very similar limitations and is therefore "consistent with Section 2412" as required by § 106(a)(3).[9] Therefore, the bankruptcy court authority to award judgments for fees and costs against the United States when sovereign immunity is waived under Section 106(a) derives from 26 U.S.C. § 7430.

### E.

The IRS does not dispute that sovereign immunity is abrogated as to its alleged actions if they are actionable under § 105, 362 or 524 of the Bankruptcy Code. 11 U.S.C. § 106(a). As stated above, the Court finds the IRS's actions inappropriate under all three sections.

The IRS does not dispute the Matthews' contentions that punitive damages may be levied against it due to 11 U.S.C. § 106(a)(3). Although this issue was unclear under the pre–1994 Bankruptcy Reform Act version of the statute,[10] it is clear now. The statute states:

> The court may issue against a governmental unit an order ... or judgment ... including an order or judgment awarding a money recovery, *but not including an award of punitive damages.*" (Emphasis added)

Therefore, the Court will proceed on the basis that there is a clear waiver of immunity as to all but punitive damages.

**9.** *In re Brickell Inv. Corp.,* 922 F.2d 696, 700 (11th Cir.1991) explains that 28 U.S.C. § 2412 (the EAJA Act) is the predecessor of 26 U.S.C. § 7430. *See Germaine,* f. 16.

**10.** *In re Lile,* 103 B.R. 830 (Bankr.S.D.Tex.1989), *aff'd,* 161 B.R. 788 (S.D.Tex.1993) (sovereign im-

### F.

Damages is a problematic issue in this case. The IRS's behavior was clearly inappropriate, but the actual damages suffered by the Matthews are not easily calculable. There were no medical bills and no expert opinion, or even personal testimony, of long-term physical harm. The effects are what are normally termed "mental anguish," except for the attorneys' fees incurred to prosecute this action and attempt to stop the IRS activities prior to this suit. "A damage award [under § 362(h) ] must not be based on mere speculation, guess, or conjecture." *John E. Green Plumbing and Heating Co., Inc. v. Turner Constr. Co.,* 742 F.2d 965, 968 (6th Cir.1984), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985).

As to damages, whether under §§ 105, 362(h) or 524(a)(2), the standard is basically the same. "Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty." *In re Alberto,* 119 B.R. 985, 995 (Bankr.N.D.Ill.1990). *Flynn v. IRS (In re Flynn),* 169 B.R. 1007, 1021 (Bankr.S.D.Ga. 1994) (damages under 11 U.S.C. § 362(h) must not be based on conjecture); *INVST Financial Group v. Chem–Nuclear Systems (In re Garratt),* 815 F.2d 391 (6th Cir.1987), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987) (the standard for determining compensatory damages in a § 524(a) case is that which is reasonably necessary); *Braun v. Champion Credit Union (In re Braun),* 152 B.R. 466, 474 (Bankr.N.D.Ohio 1993) (evidence of actual losses must be shown for an award of civil contempt). In this case, the Matthews' evidence showed they suffered mental anguish and attorneys' fees.

In *Flynn, supra,* Judge Davis awarded $5,000 in damages against the IRS to a debtor who did not suffer out-of-pocket medical expenses or long term physical or emo-

munity waived under § 106(c) and therefore IRS liable for punitive damages); *Brown v. United States* at 1019–20 (no waiver of sovereign immunity as to alleged post-discharge § 524 violative actions, since § 106 only applies to actions of IRS during case.)

tional harm. She did, however, suffer bounced checks, a canceled birthday party for her child and problems cashing checks in her neighborhood supermarket. In another case, *Washington v. IRS (In re Washington)*, 172 B.R. 415 (Bankr.S.D.Ga.1994), issued by Judge Davis on the same day as *Flynn*, he denied debtor's claim for mental anguish damages. Her emotional distress was her embarrassment at having an IRS levy placed on her wages at work.[11] The difference in the two cases shows the issue all courts must face—the degree of harm. This case is somewhere in between the harm in *Washington* and *Flynn*. The Matthews were without $1,800 for one year; Mrs. Matthews quit a job due to her stress; the debtors vomited and cried; and their children were upset. Although not quantified in exact dollars, the proof showed damage was done and it should be compensated. The Court finds that $3,000 is reasonable compensatory damage for the loss of use of funds and stress suffered by the Matthews.[12]

■ This sum is awarded to the Matthews personally and not as property of the Debtors' estate. The award is premised upon actions that took place (except for two notices which by themselves caused no real damage) *post* discharge. The claim arose post bankruptcy.

Mr. Williams claimed attorneys fees of $2,733.50 and costs of $243.20 post discharge. All of it relates directly to attempts to stop the IRS dunning and collection efforts. The expert witness who testified on the Matthews' behalf found the fees and costs to be reasonable and the hourly rate of $110 charged by Mr. Williams to be low considering the market and Mr. Williams' skill.

■ As indicated above, the Court believes 26 U.S.C. § 7430 governs any award of attorneys' fees in this case. *In re Abernathy*, 150 B.R. 688 (Bankr.N.D.Ill.1993) sets forth the requirements for an award: (1) the Debtors must be a prevailing party in a tax case; (2) the proceeding is an administrative

or court proceeding; (3) the action is brought by or against the United States in connection with collection of any tax; and (4) the United States was substantially unjustified in its position.

■ 1. "Prevailing party." The Matthews are the prevailing party in this case. There is no question that the IRS violated the automatic stay and the discharge injunction after being notified of the Matthews' bankruptcy, judgment of dischargeability of the debts and discharge.

2. "Tax case." This case relates directly to the Matthews' 1983 and 1984 taxes.

3. "Court proceeding." This action brought in the bankruptcy court is a court proceeding. *Abernathy* at 692–94; *Huff v. Brooks (In re Brooks)*, 175 B.R. 409 (Bankr. S.D.Ala.1994).

4. "Collection of any tax." The action is brought in connection with an attempt by the IRS to collect the Matthews 1983 and 1984 taxes. *Abernathy* at 694.

5. "Substantially unjustified." The Matthews may recover attorneys' fees under 26 U.S.C. § 7430 only if the position of the United States was substantially unjustified. In order to prove that the IRS position was substantially unjustified (1) the taxpayer must exhaust his or her administrative remedies; (2) the taxpayer must be the prevailing party; and (3) the United States' position in the current proceeding must be substantially unjustified. *Abernathy* at 694. The Court has already found the prevailing party to be the Matthews. (See above at No. 1.)

The Court finds that the Matthews have exhausted their administrative remedies. After each notice or levy, the Debtors or their counsel contacted the IRS to stop the collection but it never occurred. The Matthews did all they could do. *Abernathy* at 694. They informed the IRS of the discharge each and every time the IRS contacted the Matthews. The collection efforts still

---

**11.** An *ex parte* order releasing the levy prevented any loss of wages to Debtor. *Washington* at 418.

**12.** The Court is also aware from the testimony and the hours the parties spent in court that the Matthews lost work hours to attend the trial of

this matter, had to travel to the hearing and expended some amount calling their counsel and the IRS, mailing copies of letters to counsel, etc., which the Court also takes into account.

continued. The IRS agent inappropriately threatened criminal sanctions against Mr. Williams for his statements in a letter which were correct and were to inform the IRS of what the Debtors would have to do. In fact, the Debtors *did* have to sue the United States for contempt.

The crucial issue is whether the United States' position "in [the] administrative or court proceeding" was substantially unjustified. The IRS claims that its actions were unintentional and, to the extent damage occurred, it was remedied before trial.

The circuits differ in their interpretation of the meaning of "in [the] administrative or court proceeding" in 26 U.S.C. § 7430(c)(4). In 26 U.S.C. § 7430(a) it states:

> (A) **In general**—In any administrative or court proceeding which is brought by or against the United States in connection with the ... collection ... of any tax ... the prevailing party may be awarded a judgment.

The "proceeding" referred to in § 7430(c)(4) in this "proceeding" is this adversary case for damages. The Eleventh Circuit has held that this phrase refers only to the government's in-court litigating position. *Ewing and Thomas, P.A. v. Heye,* 803 F.2d 613 (11th Cir.1986); *Ashburn v. United States,* 740 F.2d 843 (11th Cir.1984); *see also, In re Graham,* 981 F.2d 1135 (10th Cir.1992); *Kiker v. United States (In re Kiker),* 98 B.R. 103 (Bankr.N.D.Ga.1988). Other circuits have allowed fees to taxpayers when the IRS's stance was unreasonable during the administrative period leading up to litigation. *Zinniel v. C.I.R.,* 883 F.2d 1350 (7th Cir.1989); *Kaufman v. Egger,* 758 F.2d 1 (1st Cir.1985); *Abernathy* at 695.

The IRS was justified in sending levy notices to the Matthews in regard to their abandoned property, but the notices did not clearly explain the situation and caused further confusion and stress. The IRS should have sent a clear explanatory letter and explained the situation to Mr. Williams when he wrote Mr. Forehand. The IRS agent testified that problems like this will arise in the future in other cases. There must be an internal way to stop collection efforts before discharged debtors are contacted eight times and have refunds incorrectly seized. This conduct is outrageous and substantially unjustified. However, the conduct was all pre-litigation. The government's litigation conduct was very ethical and professional. In the First and Seventh Circuits, the fees of the Matthews would be compensable. In the Eleventh Circuit, they are not. Under the *Ewing* case holding, the IRS's conduct was not substantially unjustified. Therefore, as inappropriate as the IRS's actions were which finally required a suit to remedy the problem, the Matthews cannot be compensated for their attorneys fees and costs.[13]

For the reasons given above, the Court can only award to the Matthews their actual damages suffered due to the IRS's actions. These damages cannot include their litigation costs. To do so would be a circumvention of 26 U.S.C. § 7430 and therefore impermissible.

Therefore, it is ORDERED and ADJUDGED that S. Dean Matthews and Julia B. Matthews are awarded a judgment in the amount of $3,000.00 in their favor and against the United States of America.

---

13. The fees and costs requested are all "reasonable litigation costs" as defined in 26 U.S.C. § 7430(c)(1). Although the statute does not explicitly cover costs such as telephone charges, facsimiles, etc., those costs should be incorporated in reasonable fees and paid if necessary to the attorneys' services. Mr. Williams seeks compensation at $110 per hour. Section 7430(c)(1)(B)(iii) allows recovery of only $75 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." No evidence of these factors was presented. Therefore, Mr. Williams would be compensated at $75 per hour or $1,863.75 together with costs of $243.20 for work shown in his actual bill. He estimated the trial would take 2½ hours. The parties were actually here about 4 hours. Therefore, the award would be increased by 1.5 hours to $1,976.25 in attorneys' fees and $243.50 in costs, or $2,219.45 due to actual hours spent.