In re Nelson ALBERTO, Debtor.

No. 98–14005.

United States Bankruptcy Court,
N.D. New York.

Oct. 20, 2000.

O'Connor, O'Connor, Mayberger & First, P.C., Albany, NY, Michael J. O'Connor, Of Counsel, Attorneys for Debtor.

Miller & Meola, Albany, NY, Rudolph J. Meola, Of Counsel, Attorneys for Manufacturers And Traders Trust Company.

Andrea E. Celli, Albany, NY, Chapter 13 Trustee.

## MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, Jr., Bankruptcy Judge.

There are two matters before the court: creditor's motion to preclude and debtor's motion for damages pursuant to 11 U.S.C. § 362(h). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334(b).

## BACKGROUND

The facts of this case taken verbatim from the parties' stipulation of facts dated November 2, 1998, are as follows:

1) On June 17, 1995, M & T financed the debtor's purchase of a certain 1990 Plymouth Voyager automobile (the "vehicle").

2) M & T obtained and perfected a lien against the vehicle.

3) As of June 8, 1998, the Debtor was in default of his obligation to M & T and the balance owed to M & T was $8765.99 with arrears of $4995.80.

4) On June 8, 1998, M & T repossessed the vehicle.

5) The debtor filed a petition for relief pursuant to § 1301, *et seq.*, of the United States Bankruptcy Code on June 10, 1998.

6) The debtor listed M & T as a creditor in his schedules.

7) On June 11, 1998, M & T sent, and prior to June 25, 1998 the debtor presumptively received, notice that the vehicle would be sold unless redeemed.

8) On June 14, 1998, the Clerk's Office of the United States Bankruptcy Court caused the Notice of Chapter 13 Bankruptcy Case Meeting of Creditors & Deadlines to be served upon all creditors listed in the debtor's petition, including M & T.

9) M & T's notice was mailed to P.O. Box 767, Buffalo, New York 14240.

10) M & T received notice of the bankruptcy filing on June 18, 1998.

11) On June 25, 1998, the vehicle was sold at auction for the sum of $1500.00 pursuant to a direction by M & T.

12) Neither the debtor nor debtor's counsel contacted M & T at any time prior to June 25, 1998.

Previously, in an oral decision, rendered on February 11, 1999, this court determined that:

1) The vehicle in question was property of the estate;

2) By selling the car post-petition, M & T exercised control over property of the estate as prohibited by 11 U.S.C. § 362(a)(3);

3) The deliberate selling of the vehicle justified an award of actual damages;

4) The actual damages, if any, would be determined via a future evidentiary hearing; and

5) Punitive damages were not appropriate.

The damages hearing was conducted on July 19, 1999. Pursuant to the testimony offered and exhibits received from that hearing, the court additionally finds that the debtor purchased a 1995 Oldsmobile to replace the wrongfully sold 1990 Voyager. The purchase price for said vehicle was $5,420, financed at 11%, resulting in a monthly payment of $177 per month. This corresponds to a loan term of 36 months.

Post-trial briefs were submitted by the parties and the matter was fully before the court on December 1, 1999.

## I. MOTION TO PRECLUDE

■ The scheduling order issued in this matter on February 11, 1999 required all discovery to be completed by May 10, 1999 and all motions to be made returnable on or before June 17, 1999.

According to M & T's counsel, discovery requests were served on the debtor's counsel on May 11, 1999. Apparently, debtor's counsel did not comply to the extent M & T's counsel desired.[1] Notwithstanding the scheduling order's prohibition of motion practice after June 17th, M & T's counsel filed a motion on July 7, 1999 and made it returnable July 19, 1999, requesting a preclusion order.

This court appreciates the frustration of creditor's counsel, however, if the debtor and/or his counsel were evading or ignoring legitimate discovery, the proper response would have been a timely motion to compel or preclude. However, it is difficult to countenance discovery that begins one day after the court's deadline. Litigants that fail to heed scheduling order deadlines do so at their own risk. In the present case, discovery requests were untimely as was the motion to preclude. As such, the motion to preclude is denied.

## II. DAMAGES

11 U.S.C. § 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

■ As to damages, whether under §§ 105, 362(h), or 524(a)(2), the standard is basically the same. Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty. *Matthews v. United States*, 184 B.R. 594, 600 (Bankr.S.D.Ala. 1995) (citations omitted). However, courts have recognized that damages from mental anguish can be difficult to prove. *Matter of Flynn*, 169 B.R. 1007 (Bankr.S.D.Ga. 1994), *rev'd on other grounds*, 185 B.R. 89 (S.D.Ga.1995).

■ While some courts have refused to award damages under section 362(h) because the debtor failed to introduce any medical evidence, other courts have imposed a less stringent standard when it is clear that the debtor suffered some appreciable emotional harm as a result of the

---

1. M & T's counsel asked for a detailed itemization and breakdown of all damages. Ultimately, he received the requested data with the exception of an itemization of the $4,000 debtor's attorney's fee. (Tr. 4.) Creditor's counsel then orally requested that the Court "preclude any evidence and testimony of attorney fees in this case." (Tr. 4.) Notwithstanding this request, during the trial, M & T's counsel further objected to testimony by the debtor regarding any damages.

stay violation. *Flynn,* at 1021–22. *See also In re Fisher,* 144 B.R. 237 (Bankr. D.R.I.1992); *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987); *In re Davis,* 201 B.R. 835 (Bankr.S.D.Ala.1996). This court agrees with the rational of the above cases and finds that emotional distress damages can be awarded against creditors for violation of the automatic stay. In addition, this court concurs with District Judge Nagle, in affirming the Bankruptcy Court, that in the appropriate case, this may be done without the necessity of medical testimony. *In re Flynn, supra,* 93. *See also In re Ghostlaw,* Case No. 96–15146 (Bankr.N.D.N.Y. August 14, 1998).

In his post-trial brief, debtor's counsel argues for damages based on:

1) Actual economic loss;

2) Inconvenience and emotional distress; and

3) Attorney's fees.

## A) Actual Economic Loss

Debtor's counsel argues, "[that the amount of] actual damages for the economic loss suffered by the debtor with regard to his purchase of an inferior car is clear." (Debtor's post-trial brief p. 3.) Debtor's counsel calculates "an additional expense of approximately $4,000 to replace his vehicle." (Debtor's post-trial brief p. 4.) The formula to arrive at this number apparently is the cost of the Oldsmobile [purchase price of $5,420 plus finance charges of $967 = $6,387] minus the debtor's version of value of the Voyager [$2,200] leaving damages of $4,187. The court assumes that this is the "approximately $4,000" figure referred to by debtor's counsel. The problem with this methodology is that it fails to factor in that the debtor now has a 1995

vehicle instead of a 1990 vehicle. Obviously, they are not comparable cars; the voyager is a different make, model and is five years older.

Additionally, at trial the debtor offered conflicting testimony as to his version of actual economic loss regarding the vehicle. On cross-examination, when asked if he lost money, the debtor testified that he thought he lost about $3,000. (Tr. 30.) However, when asked specifically about any dollar loss suffered he replied, "I have no dollar loss but it's just that [I'd] rather have the Voyager." (Tr. 30.)

The projected value of the 1990 Voyager was $2,200 in the proposed chapter 13 plan. Presumably, the 1995 Oldsmobile was worth the purchase price of $5,420 when acquired in 1998; there is no evidence to the contrary before the court. Therefore, the debtor has not suffered a "loss" in becoming the owner of the 1995 vehicle.

■ Where the debtor did suffer a loss was the cost of acquiring the 1995 Oldsmobile. The finance charge for the Oldsmobile will ultimately be $967.84 when the debtor receives a clear title in 2001. The proposed interest rate for the 1990 Voyager in the chapter 13 plan was 6.5%. Obviously, because the car was repossessed and the plan provision regarding the Voyager became moot, we will never know what interest rate would have been approved under the relevant Second Circuit precedent.[2] However, in this court's experience and opinion, 7.5% would not have been unreasonable. In any event, under no circumstance[3] would the interest rate have been as high as the 11% the debtor was required to expend for the 1995 Olds-

---

**2.** *In re Valenti,* 105 F.3d 55 (2d Cir.1997).

**3.** *Valenti, supra,* requires a present value factor of the current Treasury Bill rate plus up to

3 risk points. At no time since the filing of the petition has the Treasury Bill rate plus risk factors approached 11%.

mobile. Unfortunately, there is absolutely no analysis of the debtor's proposed plan involving the Voyager, i.e., when M & T would have commenced receiving payments, when the debt would have been satisfied and what the projected finance charge would have been.

Under a worst case scenario, if M & T received no payments for the term of the plan due to unexpected administrative expense, missed debtor plan payments, plan payments refunded to the debtor, etc., the finance charge would have been $825 [$2,200 × 7.5% × 5 years] pursuant to a simple interest theory. Thus, the additional cost to the debtor in acquiring the Oldsmobile is $142 [$967 finance charge for the Oldsmobile minus $825]. The debtor also testified that the total cost to borrow a vehicle large enough to transport his family on certain occasions was "about $500." (Tr. 25.) The debtor's testimony was credible; he is entitled to recover that cost from the creditor as part of his actual economic loss suffered as a result of the stay violation.

In summary, the court awards Mr. Alberto $642 in actual economic damages based upon the testimony and exhibits offered to the court.

## B) Inconvenience and Emotional Distress

The debtor testified to at least five examples of emotional distress caused by the stay violation:

1) Due to the stay violation, his family was left with one car for a period of 45 days with the attendant "disruption" and "family turmoil." (Tr. 14, 15.)

2) The accompanying embarrassment in asking on multiple occasions to borrow appropriate transportation. (Tr. 17.)

3) The need for two vehicles to transport his entire family on trips after the Voyager was repossessed. (Tr. 12.)

4) The inability to take his entire family to visit relatives in New York City without borrowing an additional vehicle because his wife's car "cannot make the trip to New York." (Tr. 11.)

5) The necessity for additional employment to help pay for the 1995 Oldsmobile. (When asked on direct if he was current on the Oldsmobile, he replied, "Yes, because of my part-time job I got." (Tr. 11.))

Also, on redirect, the following exchange took place:

Q. And in order to pay for the second car you had to get a second job?

A. Yes, four hour part-time job, 20 hours a week part-time job.

Q. Where is that?

A. At the Fleet Bank, cleaning the bank.

Q. And you got that job because you had to pay for this new car?

A. Yes. (Tr. 36.)

The task the court must struggle with is how to compensate the debtor for this distress. Although not quantified in exact dollars, the proof established that damage was done and should be compensated nonetheless. *Matthews, supra.* at 601. This is especially true with the need for the second job entailing 20 additional hours per week. The 1995 Oldsmobile was financed over 3 years: this results in 3,120 hours of additional employment. Obviously, the debtor will be compensated for this work, but it is work he neither wanted nor needed until the stay violation occurred. It represents additional time away from his family and additional stress for a man who has already undergone heart surgery. (Tr. 8.)

While the within case does not reach the audacity of the creditor's actions in *In re Carrigan,* 109 B.R. 167 (Bankr.W.D.N.C.

1989) (creditor visiting debtor at 9:00 P.M. on a Sunday evening using foul and abusive language) or *Wagner, supra* (entering debtor's residence at night and threatening physical harm), this debtor deserves compensation for the situation he has been thrust into. The court finds that an additional $500 should be paid to the debtor to balance the equities.

## C) Attorney's Fees

■ Debtor's counsel requests $4,000 in fees for services provided to the debtor that were necessitated by the creditor's stay violation. However, most of the work represented by these fees would have been eliminated if debtor and debtor's counsel had taken a different course of action prior to the bank's sale of the vehicle. The debtor testified that he contacted his attorney on June 9th, one day after the repossession of the Voyager. The petition was filed on June 10th. The court's docket indicates that a motion to compel turnover was filed on June 25th and made returnable on July 9th; the affidavit of service shows M & T was served on June 24th via regular mail. There is insufficient testimony in the record presented for the debtor to overcome the presumption in stipulated fact number 7.[4] The court assumes that the debtor did not realize the importance of the notice or that it was overlooked in the course of everyday life. In any event, the court finds that the debtor received notice of the June 25th sale but never forwarded that notice to his attorney. Yet even without notice of a specific sale date, it would have been more reasonable, in this court's opinion, for debtor's counsel to have immediately contacted the bank directly to endeavor to arrange for the return of the vehicle or, failing that, requesting the court to hear a turnover motion on shortened notice. If that had been done, the court would, at the very least, have stayed any sale of the vehicle pending a determination of the motion. This is no way condones or lessens the transgression of M & T, however, debtor's counsel is only entitled to reasonable attorney fees.

This case involved three phases:

1) The turnover motion;

2) The § 362(h) motion; and

3) The damages trial.

## 1) The Turnover Motion

The court cannot make any award of fees for this phase of the case. To file a turnover request 15 days after commencing the case and make it returnable 31 days after the repossession and then ultimately withdraw it after a number of adjournments is not reasonable for § 362(h) fee reimbursement purposes. It simply was too little, too late.

## 2) The § 362(h) Motion

This time is compensable for debtor's counsel. The futile attempt to obtain turnover of the Voyager did not negate the necessity to go forward and respond to Mr. Meola's thesis that no stay violation existed due to the 11th Circuit's ruling in *In re Lewis*, 137 F.3d 1280 (11th Cir.1998). This involved research, oral argument and an appeal.[5]

Based on this court's experience, the testimony and exhibits offered, the court finds nine hours at $195/hour or $1,755 to

---

4. According to the stipulation, the debtor presumptively received notice of the bank's intention to sell the vehicle prior to the sale date.

5. M & T's appeal was dismissed by the BAP as being interlocutory. No mention was made by debtor's counsel regarding work on this appeal, therefore, no compensation is awarded.

be a reasonable fee for preparing, researching and arguing the motion.

### 3) The Damages Trial

The attorney time attendant with the damages trial is speculative at best. If an expedited hearing had been brought and the car not sold, the damages trial, if any, would have been on a much smaller scale. If the parties could not have fully stipulated, a question of fact might have existed as to attorney fee time. However, most of the discovery, trial preparation and actual trial time would have been greatly reduced.

The court finds under the circumstances that 3 hours at $195/hour or $585 will adequately compensate debtor's counsel for this aspect of the work. The total attorney's fees awarded thus amounts to $2,340.

In summary, the court awards $642 in actual economic damages, $500 for emotional distress and $2,340 for attorney's fees.

It is so ORDERED.